Our next case on the docket is Partridge v. Pelle. Mr. Lane. May it please the court, David Lane on behalf of Ryan Partridge, who is present before the court in the front row with his family. Having listened to the prior arguments here, I can say that this may be the least complex case on your docket today. There's really only one issue in this entire case, and that is, was the law clearly established that jailers must take reasonable steps to protect a suicidal inmate or an inmate bent on self-harm from him or herself? And the answer is absolutely, unequivocally yes. The law was clearly established on that point. Before you get too far, let me ask you a couple of questions about who's getting sued at this point. Yes, that's a good question. How about Mergen Mitleider? No, I believe that was a captioning error on our part, and we are not raising her as a defendant or an appellee. Okay, and we agree that Deputy Smith and Deputy Mau Mau are out? Yes, we have settled the case with all the security staff. So the only defendants remaining would be the medical providers. Okay, how about Newcomb's out? Deputy Newcomb? That's, I don't have memorized who's in and who's out, but we can clarify that. Okay, but the only ones who are the medical providers. The medical people. Not the sheriff or the jailer. No, well, I mean, we have failure to train and supervise. The only claims remaining before this court. So there are claims again. Well, 5, 10, and 13 are the only claims left on the table, and the complaint in the appendix specifies who is a defendant. Let me ask you this while you're looking. So Mr. Haas retired before these events, so do we agree that Mr. Haas is out? Well, as the, yes, we do agree with that. The fifth claim cites Contreras, Mecca, Stevens, McGurk, Levitt, Taylor in their individual capacities, Pelley, and Goetz in their official capacities. And I believe that's true. That's how it's played on appeal. You say there's being sued in their individual capacities. You never mentioned their official capacities in your brief. I think that case is, those claims are gone. Well, the caption in the complaint talks about official capacities. Yeah, but then your brief says they're sued in their individual capacities. Okay. I'm not sure that it's a great loss to you in these circumstances, but it seems to me that those are gone. They may be. I have not actually thought through those claims. I didn't notice it until you just mentioned it. But it's our job to notice things like that. I guess it is. So, I want to focus on, for me, if we assume there is a clearly established law that if you have actual knowledge that someone is at risk of self-harm or suicide, that you have to take reasonable precautions, then it seems to me the next step is to tie each individual defendant with that actual knowledge. Would you agree with that? I would agree with that. And the allegations in the complaint, as I read them, are sort of, well, everyone knew. And I think that it's really important, like, for example, with the jump from the second tier, you've got deputies Eric Contreras, Christopher Mecca, and Debbie Stevens, who you claim were responsible for supervising when he was allowed out and then wandered up to the second tier. Can you show me where each of those people, we know they have specific knowledge that Mr. Partridge was a suicide risk at the time they let him wander? What we can only do, because this was a dismissal simply on the face of the complaint. There was no discovery engaged in as a result of the dismissal. So the complaint alleges that everyone knew. And we've talked extensively about how it was extremely common knowledge at the jail, because this was not Mr. Partridge's first trip to this jail. It's a relatively small jail. His mental status was well known to actually everyone at the jail. I mean, he was a frequent flyer because of his mental illness. What's the record on that? The record is it's in the complaint. That's all we can say. We don't have a record because all we've got is a complaint. But that's in the complaint where they noticed from prior incarcerations that his mental illness was getting more and more severe and profound. Once he smashed his face into the toilet and broke seven teeth out of his head, everyone was on notice that this man is. And I don't think the Supreme Court lets us do everyone knew. I think the Supreme Court has been very insistent that as to each defendant, we need to be able to say that they were aware of the severe condition, that they actually understood that it needed to be treated, and then were deliberately indifferent. And it's hard to go through your complaint and make that connection here. Well, first of all, you have to keep in mind that our source of information is a client who was actively psychotic at the time. So for us in the complaint stage, without discovery, to pin down, well, on March 3rd, you know, 2017, he had a conversation with so-and-so and so-and-so. I mean, we just can't do that. This is the pleading stage. I know. And that is the argument that's made all the time. And unfortunately, the precedent is pretty severe. But we do say that they were on notice. They all knew, everyone at the jail, including all of the defendants. And we say it repeatedly over and over. When you moved outside the Supreme Court, we have a pretty clear precedent that you have to talk about the specifics of each defendant. But what did you say to the court? Did you ask for further discovery so you could amend your complaint? Did you do anything along those lines? Well, I mean— Because the judge was ruling against you because there were inadequate allegations in the complaint. And your point makes a lot of common sense. That's not the way we do things. But a district court might have allowed some limited discovery. But did you request it? I don't believe we did. I'm not sure how we did it. I'm not sure. We're not required by law to go in and ask for further discovery. I mean, we filed our briefs and— That's really almost a fatal flaw on every one of the claims here. I didn't understand. The lack of particularity with respect to each defendant. If we go through what's alleged with respect to each defendant, it's hard to see what that defendant did that showed deliberate indifference in light of what that defendant knew. I mean, we have multiple defendants. McGurk, for example. He goes into court and says to a judge, he's a danger to himself and others. We've got to put him in a hospital. And the judge says, do it. And that, most people would say, he wasn't deliberately indifferent. He was going in and trying to get the result that should have happened. But if somebody is having a heart attack in the jail, you don't need a judge's permission to take them to the hospital. Well, you do, though, need a judge's permission to have someone sent to a mental hospital. Actually, under Colorado law, you don't. If you, as a police officer, believe someone is a danger to themselves or others, and they did this with Mr. Partridge, you can put them on a 72-hour hold. And ultimately, it has to go to a court. But you get them to the hospital first. And then you tell the court, this is what's happening. Let me use Mr. Sorry. I was just thinking it would take some bravery, perhaps, for a corrections employee to say, well, the judge didn't think he should be committed, but I'm going to do it anyway. He might have some problems there. But the judge did think he should be committed. The judge said, commit him. And then they did nothing. And what did McGirt not do? He did not take any steps that we're aware of that led to the implementation of the judge's order. Maybe it was beyond his control. It may be, because we don't know because we haven't engaged in discovery yet. That's a defense for him, maybe. But the point of the pleading is we've alleged that everybody that knew about this did nothing. Judge Arguello in the court below says her problem is that the clearly established law on point is it's too vague. And your clearly established law is that they must take reasonable steps to ensure the safety of inmates. And I'm with you on that. I think it's clearly established, if you know that an inmate is at risk of severe self-harm or suicide, that the law is clearly established. I don't know if my colleagues agree with me, but I think the law is clearly established that you can't do nothing. Right. But for each defendant, let's take Ms. Taylor, for example. And she's one of the ones that was, I guess, on duty for, I think it's count five, the jump from the- Brief interactions with- She's like none. You have inmate complaint. There's two allegations of her being involved at all. And the best you have is she says something like he might decompose, decompensate. Right. But that's, I think it's like six weeks earlier or four. I mean, I just don't think that allegation, maybe you can get better allegations, but I don't think that allegation gets you there with respect to Ms. Taylor under existing precedent. The issue that we face is that we have a whole host of defendants here, and we have only vague knowledge of what some of them did. We have much better knowledges to others, such as McGirt, that I've given you an example of. But at the pleading stage, there is no case law that I'm aware of that precludes us from saying something like all of the defendants were on notice. They all knew that Ryan Partridge was self-harming and needed intervention. And none of them did anything. That is the truth. And there's no pleading requirement that says we have to know what we can't know. And we can't know it until we engage in discovery, and they get deposed, and maybe they have defenses. And maybe at the summary judgment stage, half of them get dismissed out of the case. But that's not true at the pleading stage. And we have alleged facts sufficient in a very, very detailed complaint, given the limited scope of information that we have, indicating every single one of these defendants knew what Ryan Partridge's situation was, and not a single one of them lifted a finger to do anything about it. And that is in violation of clearly established case law that says when you have an inmate who is self-harming, you must take reasonable steps to protect them. I mean, that's pretty basic stuff. That's common sense. It has been the law since Crane decided by this court. And that was Judge Arguello's only reason. She said, yes, there's a constitutional violation here. She said, yes, they were on notice of this constitutional violation. But there's no clearly established case law saying that they have to do anything. And the magistrate judge said, well, the clearly established case law is when they're on this kind of notice, they have to take reasonable steps. Well, he was seen by a psychiatrist a few days before the gouging incident, three or four days. Is that correct? Yes. Do you know what happened then? No, we don't. I mean, we just don't. But wouldn't you assume that the psychiatrist, if the psychiatric exam indicated this very significant problem, that the psychiatrist would initiate the steps to have these things taken? We don't know if any of these defendants were even on duty between the time of the psychiatrist's examination and the time of the incident. Do we? No, we don't. Doesn't that make a difference to the validity of your claim? It may down the road if they say, oh, well, the psychiatrist walked around and told all of us, oh, he's fine now. He's no longer a danger. But we don't know that because this is dismissed on the pleadings alone. We can't know these things until we engage in discovery. So that may be a good defense for all these defendants, that the psychiatrist sat us all down in a meeting and said, he's fine. Don't worry about him anymore. He's cured. OK, that's a complete defense. And if that happens, then we're out of luck. But at the pleading stage, which is where we're at. You don't think you even have to plead that a defendant was on duty between the time of the psychiatric exam? I view this as somebody saying, look, I've got chest pains, OK, to a guard or to a nurse or to someone. I've got chest pains. And they say, oh, go lie down. No, no, no. We're talking about the guard who's not there, who's on vacation that week. Well, but they are all, they all have knowledge of all the self-harming behavior. It's an ongoing process. Knowledge is one thing, and then failure to act. Exactly. But if you're not there, you can't act. If you don't have authority to do these things, you can't act. You're saying you don't need to allege anything about what was going on between the time of the psychiatric exam and the incident. We don't know. So we can allege what we don't know. And that's fine. You can sue a dozen people even though you don't know anything about what they were doing or allege anything about what they were doing during that. We allege they knew he was self-harming and they did nothing ever. They never, ever did anything. That's the point. They have to take reasonable steps. And instead of taking reasonable steps, they took no steps. You don't think a reasonable step would be to make sure that there's a psychiatric exam? That doesn't get him help. If there's nothing done, if the upshot is, you know, oh, well, we went to court. We asked a judge to commit him. The judge said commit him. And then we didn't commit him. We didn't take him anywhere. We didn't put him in a hospital. We didn't take him to the state hospital. We didn't give him any meds. We did nothing. That's all we can allege in a complaint, and that's what we have alleged. Well, I mean, he was prescribed medication. And he wasn't taking it. And he wasn't taking it. And, you know, I don't think there's clearly established law that you must forcibly medicate. Well, only if he's a danger to himself or others. And then he is. There's no clearly established law that you have to forcibly medicate. And, in fact, I think we have a case that's contrary to that. There are cases that say that you can get a court order and you can in some instances, but there's nothing that says you must. You're right about that. But in terms of what they must do, they must take reasonable steps. And one reasonable step is a 72-hour hold under Colorado law where they do forcibly medicate people. Well, they don't. The jail doesn't. The hospital does. But they're the gatekeepers to the hospital. So I'm out of time. Yes. Thank you. Thank you. Why don't you tell kind of what you think needed to be done to state a claim here? I mean, there's a lot of appeal to the argument that nobody did anything. And I think it's contrary to our precedent to paint with that broad a brush. But it puts them in a very difficult position when there may well have been constitutional violations for which there's a remedy. And they can't, at this stage of the case, plead. How do you respond to that? Well, Your Honor, by the way, John Osgood, on behalf of, I'll introduce my clients, is the sheriff's defendants with the exception of Ms. Taylor. Ms. Taylor's counsel will be separately arguing for me. And I will be setting aside time for that. Your Honor, the broad statement that Mr. Wayne made during his oral argument is that everybody was on notice. There are no factual allegations specific to each defendant. Well, he's saying when you know this, you should do something. We know nothing was done. And that's enough to impose liability on everyone. Well, and as the court, as Your Honors recognize, I don't think it's correct to state that nothing was done, first of all. Well, nothing effective was done. There were things done, but it didn't stop rather severe injuries. It did not. That's correct. And I think if you focus, they focused on two separate counts. The first count is that despite the fact that Mr. Partridge has presented with severe, untreated mental illness that is causing him to behave in self-injuring. He beat his head against the toilet and did different things. I mean, he was presenting as quite mentally ill. He's allowed to wander about so they can go up on a higher tier and throw himself off. I mean, somebody should have prevented that, shouldn't they? Well, Your Honor, I think that it could have. It certainly could have been prevented. But the reality is that that specific notice, that any specific notice relative to the very first incident, the incident where Mr. Partridge threw himself off that second tier, there was simply no notice prior to that event that that type of behavior, that type of event was actually going to occur. Well, he'd already told someone that he was suicidal at that point, right? He had told the jailer that he had suicidal thoughts. Suicidal ideation. And he had bashed his head into the toilet in the cell knocking out a bunch of tea. Correct. And that had all happened before. That had all happened before. And he was presenting with acute psychosis. That's all true, right? That's correct, Your Honor. And if you're one of the people who is on duty that night and you've got someone who's in the middle of a manic episode, isn't it, and you know that they've got prior suicidal ideation, I mean, should you prevent them from wandering out in the middle of the second tier? Well, it depends on the mechanism that you employ in terms of what clearly established law requires. Well, let me tell you what I think. I think that it is clearly established if you have knowledge that someone is a suicide risk or a risk of grave self-harm that you must take reasonable precautions. So I will direct the court to, for instance, the Petrescu case in 2018, addressing this point and addressing the fact that the position that reasonable steps must be taken to protect an inmate doesn't provide a controlling source of clearly established law. And that was the direct holding of the court in the estate of the lien. So you think we have to have a case that says you have to prevent them from jumping off of the second tier? And if you don't have that case, plaintiff can't prevail. But I think we do have to have a case that states it's clearly established law, for instance, with respect to the prophylactic measures that the plaintiff suggested in his brief, whether they be constant 24-hour monitoring, forcible medication, which the court did address briefly during Mr. Lane's oral argument, and the third, I'm sorry, the third being commitment to a mental health facility. What about count 10? They literally see the blood on his face and do nothing. Well, Your Honor, again, the issue there is what were they required to do? You agree it's more than nothing, don't you? I do, and I believe things were being done. When their screen sees the blood and doesn't examine his face, how do you justify that? Well, again, Your Honor, I would direct the court back to the discussion regarding the measures that should be taken. And the reality is that the measures that the plaintiff suggested as prophylactic measures in their complaint are not the subject of clearly established law where a jail official would be on notice that that jail official needs to take that specific action. When he was banging his head into the toilet, they eventually put him in a restraint chair, right? That's correct, Your Honor. Okay, so they intervened and they did something to keep him from harming himself. I mean, in the gouging incident, count 10, as my colleague just pointed out, they did nothing. They didn't even investigate why is there blood on his face. Until they subsequently realized that… Until it was too late, yeah. Well, until it was too late, I would agree. But, again, Your Honor, it goes back to the issue that Mr. Lane foreshadowed at the beginning of his oral argument, which is the issue of clearly established law. And I would submit that, as Judge Arguello found at the district court level, the simple statement that everybody knew, for one thing, is insufficient as a matter of law under U.S. Supreme Court precedent. The simple statement that they should have taken reasonable steps is also insufficient. The fact of the matter is that those reasonable steps need to be defined. And Mr. Partridge, in his papers, attempts to identify those steps that he believes should have been taken. But those are not steps that are established under… They're not clearly established law under U.S. Supreme Court or this court's precedent. Okay. I'm trying to understand what you think is needed if, let's say, hypothetically, the guard saw the blood on his face and understood it was a serious medical condition and did nothing. You would say the law is not clearly established because we don't have a case that says if they're trying to gouge their eyes out, you have to put them in a restraint chair. I'm simply saying it's a defect in the pleadings. The reality is that simply saying… just simply generically stating that reasonable steps need to be taken is deficient under this court's precedent and the U.S. Supreme Court's precedent. Well, the standard is deliberate indifference. So if they know and they choose to do nothing, it's a constitutional violation, isn't it? I would disagree because I disagree with the premise because the statement that they were doing nothing or that they had done nothing is contradicted by… it's contradicted by the complaint itself. Well, I'm asking you if you have someone who knows, has actual personal knowledge of a severe medical condition and does nothing. In your view, would that be a violation of the Constitution? Would that constitute deliberate indifference? Yes, that's my question. Well, Your Honor, I think that… I mean, it's a yes or no question. I think that's a yes, but that's not the case that we have here. I understand that you don't think that's the case that we have here, but I'm trying to figure out what, in your view, it takes to have a constitutional violation. Well, it takes the… under this court's precedent, it takes a violation that's been clearly established under the law. And what more do you need for clearly established than it's a serious medical condition, I'm aware of, I understand it's a serious medical condition, and I choose to do nothing. What else do I need to be clearly established? You need more under this court's precedent and under the Supreme Court's precedent than simply stating… More than what? You need more than simply stating that reasonable steps have to be taken. How do you define those reasonable steps? Okay, so I need a case that says either I've got to put him on a 24-hour watch or I've got to put him in a restraint chair or I've got to immediately transport him to… I mean, is that what you're saying we need? I believe that's what the plaintiff is saying you need, because that's the prophylactic measures that they suggested were necessary. If there aren't additional questions, I will defer my remaining time to Ms. Moran. Good morning, or maybe afternoon, Your Honor. May it please the Court, my name is Elizabeth Moran. I represent the defendants, Mergen Mitleider, who we now know is no longer in this case, and Amanda Taylor. Ms. Taylor is an afterthought to this entire appeal. She was not a Boulder employee like Ms. Mitleider. Neither were Boulder employees. They were therapists who came in and provided services in the jail from time to time. Ms. Taylor saw Mr. Partridge, I believe, a total of three times, not in any proximity to any self-harming incidents. She's mentioned only two or three times in the opening brief, and that's only in the statement of facts. There's no argument regarding the basis for her dismissal, which is entirely different from the basis of the Boulder defendant's dismissal. That was a qualified immunity argument. Our argument was not qualified immunity, because that doesn't apply to someone who's not associated with the governmental entity. But it was simply that the plaintiff had failed to allege facts plausibly showing that Ms. Taylor was deliberately indifferent to his serious medical needs. And as the Court has pointed out, this is a very defendant-specific inquiry. That is where the district court differed from the magistrate's analysis. The district court correctly assessed that we can't look at the defendants as a monolith. We have to look at what everybody knew when they knew it under the circumstances that they were presented. So, you know, having not addressed this issue in the opening brief, I submit that that's a waiver. I don't need to say more about that. It's all in the briefs. But in the reply brief, plaintiffs just say, well, for the same reasons you should reverse this to Boulder defendants, you should also reverse this to Amanda Taylor. But as my time winds down, I would just urge the Court to look at what the allegations against her were, when they occurred. She found nothing that was specific for a risk of suicide or self-harm. Mr. Partridge had mental issues, certainly, anxiety, auditory hallucinations. If he wasn't taking his meds, he could decline. None of those are specific for suicide, and nothing happened to him for weeks to months, distant from Ms. Taylor's interactions with him. I would just simply ask the Court to affirm. Thank you. Thank you, Counsel. The case is submitted. Counsel are excused. The case is submitted. The case is submitted.